Good morning, Your Honors. Good morning, Counsel. May it please the Court, my name is Jeffrey Faust. I'm the attorney for Denise Schmidt. Briefly, what I'd like to talk about is briefly about the First Amendment issue, and then I'd like to talk briefly about the two supplemental cases that we letter brief the Court on and how those integrate into the arguments we've made into our briefs, and those would be the Anquist case of the United States Supreme Court and the Elkins case of the California Supreme Court. And then finally, I'd like to spend a moment talking about the relief we're seeking from the Court and why relief is appropriate against the county defendants as well. On the First Amendment issue, what we're asking the Court to do is to join the Fourth, Fifth, Seventh, and Eleventh Circuits in recognizing that running for public office is a protected activity under the First Amendment. It doesn't make any sense to draw the distinction, as the Sixth Circuit apparently has, between candidacy and political expression. If we think about what a political campaign is, it's really nothing but a campaign to draw a distinction between government of the people where somebody can vote and somebody has rights of free speech, but that they don't have an equal right, every single one of us, to stand up and run for public office without fear of retaliation by any government entity is a gross misconstruing of the Constitution, Your Honor. That's all I'll say on that. But even if there wasn't an individual right to run for public office at issue here, and whether it's fundamental or not for equal protection purposes, it's a simple, another huge issue that goes to the equal protection scope of review and how difficult it is once you're in strict scrutiny and why the Supreme Court wanted to avoid that, because they don't want to set the filing fees for every candidate in thousands of cases to be equal protection fees. They want to set the filing fees for every candidate in thousands of cases, and they want to avoid that. And that's what the Constitution says is a constitutional right to every single government regulation of candidacy. But that doesn't mean that there isn't a constitutional right of the individual to run for office, and above that, when you get down to the balancing tests that the district court should have taken, there's a public interest. So let's just back up for a minute. This is not a 12b-6 dismissal. Pardon? This case. Yes, Your Honor. It's not a summary judgment. That's correct, Your Honor. So why is all this evidence in the record? Shouldn't we just be looking at the four corners of the complaint? I'm not referring to evidence, Your Honor. I'm talking about the per- No, the record that we have is replete with evidence of he said, she said and e-mails and all of this evidence, and yet this is a 12b-6 motion where we look at the pleadings and we make them in the light most favorable to your client. That's correct, Your Honor, but I'm trying to save my client's case when I get to the district court on a 12b-6 hearing. And the way the practice has been in the northern district I'm not criticizing you personally. Right. I'm just saying, shouldn't you be arguing that the judge considered all this material and he should have been confined to reviewing the Your complaint, your, it's, they probably seem to refer to it as the second amended complaint, but it actually is the first amended complaint. First amendment complaint was dismissed against the county defendants. The second amendment complaint was the second 12b-6 order, which was against the judicial defendants, Your Honor. So there were two 12b- the court didn't hold a hearing on the second one, by the way. Right, but I, okay, but I, there wasn't a document entitled second amended complaint, there was only- Yes, Your Honor. I couldn't find the second amended complaint. Yes. It's number 14, I believe, tab 14 in the record, Your Honor, and that is the one that is effective against the judge defendants. But the point is, Your Honor, that it's true, 12b-6 is a pleading motion, but one of the things that happens here is we have initial disclosures under Rule 26a before, usually the practice, in my experience, has been in the northern district, we get these initial disclosures before you go to 12b motions. The district judges want that to happen first. And we did get an initial disclosure here, and what the initial disclosure showed very, very clearly is that none of the defendants are being straightforward in their discovery obligations, Your Honor. Look- I don't see what that has to do with the 12b-6 motion. It has to do with both 12b-6 motions in this respect, Your Honor. With respect to the county defendants, it has to do with this. Under the normal structure of government, as the county has briefed and as the district court argued, it is clear the county should not have been involved in personnel administration for the judges, and therefore, under the structure of government, they should not have been involved. But now we find out from the initial disclosures, not from the county, but from that document that I attached to my reply brief from the judges, that the county council, deputy county council, had been in there rewriting this so-called policy after the fact to make it look like something different from what the effective document that was used to fire the plaintiff. Now, if on the one thing the county is saying, structure of California government, ninth circuit president says we can't be responsible for these civil rights violations. Well, that's fine when you follow that structure of government. But when you send a policymaker from the county council's office, a county policymaker in there with the judges to basically cover up what they've done by rewriting this policy, which we've never seen- Are you arguing that she's the final policymaker for the county? Her boss is, Your Honor. Yes. So did you allege that in your complaint? Yes, Your Honor. We allege that it was a policymaker for the county, and then we got into oral argument with the judge and part of the trial judge at the hearing, the one hearing we had on the 12B6, and we explained this. It's in the transcript. Your Honor, we agree the county should not have been involved in this termination. They should not have been involved in changing the policy after the fact to justify it. But they were in there. There was a deputy county council, as demonstrated in the documents that were disclosed in initial disclosures by the judge defendants. County council did have a representative in there, and again, we know that the county is not being straight with us because they had an initial disclosure obligation, and under 26A1A of the federal rules of civil procedure, they're supposed to tell us who the witnesses are. And did we get any disclosure that, oh, by the way, deputy county council was involved in this transaction by which your client was fired? No. We got no disclosure of that. We found that out from the other defendants. What I'm saying is, Your Honor, yes, this was a pleading motion. It should have been denied as a pleading motion. But we also have additional information in the record right now, and it doesn't help the defendants. It shows that the plaintiffs are on to something and that defendants are not being square with them. Let's go back to your free speech claim. Yes. The complaint I have is that you allege that she was retaliated against on the basis of both her candidacy and her exercise of free speech. Correct, Your Honor. Okay. So let's talk about the candidacy. Was there a message she was trying to communicate through her candidacy in addition to just running? There's always a message, Your Honor. Vote for me. Her message is the incumbent judge is not doing a job that is worthy of the voters of this county and that there's a better candidate who will do a better job, so when you go into that voting booth in November, vote for me because I will do a better job enforcing the law for the people of this county. And that is the message that is there every time somebody runs for public office. And to try to draw a distinction, as the Sixth Circuit has, between candidacy and political speech abstracted from the candidacy, it's not going to hold up, Your Honor. When you come down to adjudicating individual cases, you're going to find that a political campaign always involves protected free speech at its very essence because it's always a challenge to an incumbent who's up there and an implicit if not an explicit message, I'm the better person to perform this public service for you people who have to vote. The distinction is just not going to hold up, Your Honor, and I believe that's why the Fourth, Fifth, Seventh, and Eleventh Circuits have recognized a First Amendment right to run for office that's abstracted from any expression that you make in that campaign. I would like to say a moment about this class of one equal protection claim because it's confusing. Obviously, it's all gone now after the Supreme Court's decision in Anquist. But our case was not really a class of one equal protection claim. It's my understanding the class of one idea is I don't like this individual, Jane Doe, and so she's going to get adverse treatment because we don't like her as an individual. And then the defendant would come in and give under a rational scrutiny equal protection test. Well, this was the reason why we did it. But the Supreme Court said in affirming this Court's decision in Anquist, we're not going to go there because you can't have at-will employment if the employer has to give an explanation. They don't have to give an explanation. If it's not a forbidden reason for firing them, the employee can be fired without an explanation, and that would be inconsistent with even rational basis, minimal equal protection scrutiny of every public employee. So the class of one argument is out. But that wasn't the gist of her equal protection claim in this case anyway. The class that is involved here is the class of temporary judges who took inactive bar status. And in this case, of course, it was initiated by the bar itself, and it was an appropriate status, but yet we have Contra Costa Superior Court saying, well, if you took inactive bar status, you can't be a temporary judge anymore, and you're barred from the permanent job, and you're barred from the next five years for applying for the temporary job. And that's an irrational distinction. The judges, the temporary judges who went on inactive status were just as eligible, they were more ethical, or just as ethical, it wasn't unethical to do that. There's no basis for saying these folks aren't eligible anymore because the bar took the initiative to make Denise Schmidt an inactive member. It doesn't make any sense. And so even ---- Thank you, Your Honor. Good morning, Your Honors. May it please the Court. Joseph Wiley, and I'm representing the individual defendants, Tory, Mattick, Haight, Askin, and Brady in this matter. I'm going to use approximately six minutes of the time and then give the remaining time to the counsel for the county who is here with respect to the first amended complaint. Perhaps I'll just take a moment and talk procedurally, Your Honor, because there was an original complaint that was amended, and it was the first amended complaint that is the subject of the January 2006 order by Judge Walker. There was leave to file a second amended complaint, and that was the subject of Judge Walker's November or December 2006 order with it. I guess what I don't understand is Judge Walker seemed to consider all this evidence that appears to be disputed, and that's not what you're supposed to do on a 12 v. 6 motion. Your Honor, I don't believe that Judge Walker did consider the evidence with respect to it in determining the case. So, for example, with respect to the first amended case, and I'll talk just briefly about the issue of legislative immunity, the case, it's pled that there was a personnel rule, an administrative rule that required the plaintiff to be an active member of the bar. That's pled in both the first amended complaint at paragraph 19 and the second amended complaint at paragraph 11. There is a California constitutional provision at Article VI, Section 6, Subpart D, that gives to the California Judicial Council the authority to adopt administrative rules for the court. The California Judicial Council, in adopting administrative rules, adopted Rule 204.2 and instructed that all trial courts, all 58 trial courts in the State of California, must have an internal operations manual with respect to personnel procedures. That is the manual that's at play here. That administrative policy is founded at that manual. The judge then, in relying on the Virginia Supreme Court decision, concluded that the judges of the Superior Court were acting in their legislative capacity when they adopted that rule pursuant to Rule 204.2 from the Judicial Council, and so that they were acting legislatively when they did that, and as a result they enjoy legislative immunity when they adopted that rule. And so I don't believe he considered any evidence with respect to that. There were pleadings that pled an administrative rule, and there is a court decision, Supreme Court decision, in the Virginia Supreme Court case that addresses an administrative rule by the court. With respect to the second amended complaint, counsel again here, as well as in his brief, really misplaces the difference between candidacy and campaign. And I think you'll find when you look at Clements v. Flashing, U.S. Supreme Court decision, that both in the per curiam opinion and in the dissent, both authors recognize that the U.S. Supreme Court has never found a fundamental right to express political views through candidacy. And that's what the two Ohio courts found in Myers v. Dean and Carver v. Dennis. The case was candidacy. And what counsel is misconstruing, I believe, is the nonverbal act cases. So candidacy itself is a nonverbal act. She didn't engage in a campaign, or at least he has not alleged. I mean, why isn't it a verbal act? I mean, he says when you become a candidate, you're inherently asking someone to vote for you. It may be inherent, but it's not verbal. It is simply it's the status of being candidate, and then you would look at Texas v. Johnson to determine whether or not there was the intent to send a particularized message and whether that particularized message could be understood by the recipients of it. And the candidacy itself is just simply saying vote for me. That's not a particularized message in the same way that flag burning, in the same way that wearing a black armband, or in the same way of the refusal to salute the flag would be a particularized act. I would think, though, of all the things that the First Amendment might be intended to protect, running for office in a popular election would be absolutely primary. I don't believe there are cases that support the running for office, the campaigning, what you say on the campaign trail. So I would direct Your Honor to Thomas v. Carpenter, which is a decision of this Court, where it is what Lieutenant Thomas said during the campaign. He said that the sheriff or implied that the sheriff was incompetent. Actually, I think he said he wasn't competent to run the office, stated that he did not have a commitment to being sheriff. What the Court found were he made campaign statements, and those campaign statements were protected. Right, but here he's saying implicit in her candidacy against an incumbent. The implicit message is that the incumbent is not doing a good job, so you should vote for Schmidt instead because she'll do a better job. That is an implicit message that one could infer, but when you look at Texas v. Johnson, it says it has to be a particularized message, not just something that may be ambiguous or may be inferred. Well, let me ask you something. So aren't there exceptions to legislative immunity? I don't believe that there are. I mean, it's an absolute immunity. Suppose the judges were acting outside or for retaliatory motive in adopting this role. No, there is an absolute immunity with respect to legislative acts, even if the motive by a legislative body, and in this case judges are sitting as a legislative body in adopting the rule. So legislative immunity does provide an absolute immunity for promulgation, not for application. And that's the distinction that Judge Walker made in the first case. Who actually fired or didn't rehire Ms. Schmidt? Who communicated it? No, who made the decision? Who's the final decision maker in this? They have alleged that it was judgematic. That's the allegation in the complaint. And he applied the rule. Is he the presiding judge? He was the assistant presiding judge at that time. But that's the application of the rule, not the promulgation of the rule. Right. So that wouldn't be protected by legislative immunity. That would not. That's correct. And we have not ever argued that the application is protected by legislative immunity. If I may, I would like to give counsel an opportunity. Thank you very much. Thank you. Good morning, Your Honors. Monica Cooper, Deputy County Counsel for the county defendant here. The only way that plaintiff can get the county liability in this case is to prove that a county final policymaker had the authority to make the judicial defendants pass this personnel rule. Mary Ann Mason is a Deputy County Counsel. Her, the comments by counsel is a red herring with her involvement here. She was involved as an attorney for the Superior Court. She is not a final policymaker. She cannot be a final policymaker in this action. A final policymaker is an elected official or a department head. Mary Ann Mason is neither of those. Also, plaintiff did not allege that the county counsel of Contra Costa County is the final policymaker in this case. The allegation in the first amended complaint for which the county was dismissed on was that the CAO of the county and the auditor controller were final policymakers here. But in this case, the county, the state constitution, the state statutes, and all the case law cited in the county's brief established that there can be no final policymaker of the county that could have authorized and directed this Superior Court personnel rule to be put in place. There, the law is clear on that. The law is also clear that the county did not employ the plaintiff. The county did not terminate the plaintiff. And no matter what the argument is, the complaint cannot be alleged to name a county final policymaker who would have had the authority to promulgate and direct the Superior Court personnel. Ms. Cooper, doesn't the alleged involvement of the county counsel, I think his name was Mason, suggest that the county conspired here with the Superior Court? No, Your Honor. With respect, Your Honor, what that tells us is that Mary Ann Mason, as a deputy county counsel, contracted with the Superior Court and was their attorney. It would be as if the Superior Court hired a private attorney to assist them with their promulgating of the rule or review of the rule, and plaintiff could no more go against the law firm that hired that attorney, that assigned that attorney to work with the Superior Court, than it can against the county, because there has to be a county final policymaker directing that rule. And the law says that the county has no place in directing judges, in controlling judges. How could Ms. Mason even be advising an entity that's a body of the state? I mean, how does the judges become her client? Well, they were her client prior to the trial. Right, but how? I mean, how does that work when the court is not an entity of the county? By contract, Your Honor. It's as if they were contracting with an outside attorney. But the issue here is whether Ms. Mason can be a final policymaker, and she cannot. Well, I suppose maybe your position would suggest that if she did something untoward, the remedy is a suit against her in her personal capacity and not against the county. Right. We have no information as to what ---- No, I'm just trying to separate her actions from the county's actions. Right. I suppose if ---- She could not be liable directly on this 1983 action, Ms. Mason. And nor could the county, because Ms. Mason as an individual, and also the county as anyone in the county being able to, under the law, be a final policymaker in passing the superior court. Because what is at issue here is this superior court personnel rule. And the fact that, again, the fact that Ms. Mason took part as an attorney, separating aside from final policymaker, it would be just as if she were an attorney for an outside private law firm. And plaintiff could not sue a private law firm under Section 1983 here. And the fact that Ms. Mason was advising the court during this procedure does not make either the county counsel the final policymaker, because Ms. Mason cannot be one. It does not make anybody else ---- All right. Well, you're well over your time and you're repeating. So thank you very much, counsel. Okay. Do you ---- Okay. Schmidt v. Contra Costa County will be submitted.
judges: Canby, Wardlaw, Mills